Gregory Kafoury, OSB No. 741663
kafoury@kafourymcdougal.com
Mark McDougal, OSB No. 890869
mcdougal@kafourymcdougal.com
Charles Merten, OSB No. 630582
cjmerten@gmail.com
Of Counsel
Kafoury & McDougal
320 SW Stark Street, Suite 202
Portland OR 97204
Telephone: (503) 224-2647
Facsimile: (503) 224-2673

Attorneys for Plaintiff Bonnie McElrath

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| BONNIE MCELRATH,<br><br>        Plaintiff,<br><br>        v.<br><br>FISH RITE, Inc., an Oregon Corporation, JAMIE DORSEY, SR., AND BARBARA DORSEY,<br><br>        Defendants. | Case No. CV-08-1159-KI<br><br>PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT, OR TO STRIKE AFFIRMATIVE DEFENSES<br><br>(ORAL ARGUMENT REQUESTED)<br>(TELEPHONE HEARING REQUESTED) |

## SUMMARY

At 9:48 A.M. on November 19, 2009 defendants filed their First Answer

1 –   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT, OR TO STRIKE AFFIRMATIVE DEFENSES

Page

KAFOURY & McDOUGAL
320 SW Stark Street, #202
Portland, OR 97204
Tel (503) 224-2647
Fax (503) 224-2673
(lastname)@kafourymcdougal.com

to Plaintiff's Complaint[1], a full 253 days after Judge Panner's Order denying defendant's motion to dismiss Plaintiff's claims[2]. This filing was without leave of Court and in violation of FRCP 12(4)(A), and to allow it to stand greatly prejudices the Plaintiff. Further, several of Defendant's proposed affirmative defenses are bared by the law-of-the-case.

DISCUSSION

MOTION FOR DEFAULT

When a Motion to Dismiss for failure to state a claim is filed in federal court, FRCP 12(4)(A) extends the time within which a defendant must answer to 10 days following a denial of the motion. Here, the motion was denied on February 27, 2008[3], and defendants were required to file their Answer on or before March 10, 2009. Defendants waited until November 19, 2009 at 9:48 A.M., 253 days later, to file their Answer. Defense counsel's staff hand delivered a copy of that Answer to attorney Merten at 8:05 A.M. on November 19, just before attorney Merten started the deposition of defendants Jamie Dorsey, Sr., Barbara Dorsey, and their son, Jamie Dorsey, Jr.

The flagrant violation of FRCP 12(4)(A) is inexcusable, and has the effect of hiding the ball from Plaintiff for so long as to deprive her of any opportunity to discover the foundation of any purported defense. The Court has set December 18, 2009 for the date the pretrial order and the Joint Alternative

---

[1] Docket No. 27
[2] Docket No. 18
[3] Docket No. 18

2 –   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT, OR TO STRIKE AFFIRMATIVE DEFENSES

KAFOURY & McDOUGAL
320 SW Stark Street, #202
Portland, OR 97204
Tel (503) 224-2647
Fax (503) 224-2673
(lastname)@kafourymcdougal.com

Dispute Resolution are to be filed. Plaintiff has no opportunity to seek document production, receive responses to Interrogatories, take depositions, receive answers to requests for admissions before filing the pretrial order, move to dismiss some of the affirmative defenses, or to seek summary judgment on any of those defenses. In short, if these Affirmative Defenses stand, Plaintiff will be deprived of all meaningful discovery about them, and of the opportunity to move against them.[4] Plaintiff requests that the Court enter a default against all three defendants for their conduct in waiting to the last second to show their cards, causing great prejudice to Plaintiff and disruption of this Court's own process and docket. The only issue at trial should be Plaintiff's damages.

## ALTERNATIVE MOTION – STRIKE THE AFFIRMATIVE DEFENSES AND THE COUNTER CLAIM

### INTRODUCTION

<u>Law of the Case</u>

On November 4, 2008 defendants filed their Motion to Dismiss[5] supported by their Memorandum[6]. Their first ground was that Plaintiff had failed to comply with the prefiling requirements under both Oregon and Federal

---

[4] On November 19 and 20, 2009, Plaintiff attempted to obtain information about the affirmative defenses at the depositions of Fish Rite, Jamie Dorsey, Sr., Jamie Dorsey Jr., and Barbara Dorsey. Defendant Barbara Dorsey and Jamie Dorsey, Jr. (the new general manager of Fish Rite) said they did not even understand what the defenses were, and could offer no information whatsoever. Defendant Jamie Dorsey, Sr. for himself and for Fish Rite, also was able to offer no information about these defenses other than the deny that he had sexually harassed the Plaintiff. None of these deponents had read the entirety of the BOLI finding against Fish Rite, Inc.

[5] Docket No. 4
[6] Docket No. 5

3 –  PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT, OR TO STRIKE AFFIRMATIVE DEFENSES

KAFOURY & McDOUGAL
320 SW Stark Street, #202
Portland, OR 97204
Tel (503) 224-2647
Fax (503) 224-2673
(lastname)@kafourymcdougal.com

law because Plaintiff allegedly did not file in Court within the required time period under Oregon Law, and by filing prematurely under Federal Law. Defendant's Memorandum In Support of Motion to Dismiss, pp 1-4.

Defendant's third ground was that Plaintiff has an adequate remedy under ORS 659A and therefore her common-law wrongful termination claim is preempted. *Id*, P.5.

Defendant's fourth ground was that because Plaintiff alleged that Barbara Dorsey was an owner of Fish Rite, Inc.[7], she could not be sued for Intentional Interference with Economic Expectations[8].

The Magistrate recommended denial of those motions, and Judge Panner adopted the recommendation.

## FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

The court has already ruled that Plaintiff has stated claims for wrongful discharge, Intentional Interference with Contract and violations of ORS 659A.030 and Title VII. That ruling is the law of the case, and cannot be revisited.

The sole part of the complaint not already found to state a claim is the battery allegations. Clearly, Plaintiff has plead a battery – Dorsey put his hands on Plaintiff in efforts to kiss her, made a drunken lunge for her in an effort to kiss her. He caused Plaintiff physical revulsion and fear. Complaint,

---

[7] Recent discovery disproves that belief, see, e.g., Ex A hereto
[8] Defendant's Memorandum in Support of Motion to Dismiss, pg 5.

4 –   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT, OR TO STRIKE AFFIRMATIVE DEFENSES

KAFOURY & McDOUGAL
320 SW Stark Street, #202
Portland, OR 97204
Tel (503) 224-2647
Fax (503) 224-2673
(lastname)@kafourymcdougal.com

paragraphs 10, 11, 15.[9]

### FOURTH AFFIRMATIVE DEFENSE – WRONGFUL DISCHARGE IS PRECLUDED BECAUSE AN ADEQUATE REMEDY EXISTS

This was a ground for dismissing the wrongful discharge claim. It is a pure question of law. The ruling denying that motion is the law of the case.

### SEVENTH AFFIRMATIVE DEFENSES – ORS 65A.030 AND TITLE VII CLAIMS ARE BARED BY THE STATUE OF LIMITATIONS, FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, AND/OR "FAILURE TO ALLEGE" REQUIRED PREREQUISITES TO SUIT

The basis for defendants' Motion to Dismiss these claims is that BOLI was a day late on notifying Plaintiff of her right to sue. This defense is simply a rehash of that argument and the Court's prior ruling is the law of the case.[10]

### SECOND, THIRD, FIFTH, AND SIXTH AFFIRMATIVE DEFENSES

The Second is estoppel, the Third is failure "to effectively mitigate" damages, the Fifth is an alleged worker's compensation act bar, and the Sixth is an alleged "offset" for any "benefits, wages, or other money Plaintiff has received related to employment or unemployment from the date her employment ended."

All these defenses depend, in part, on facts. Estoppel, e.g., requires conduct on the part of Plaintiff that defendants relied upon in taking or not

---

[9] As an alternative to Plaintiff's Motion to Strike the First Affirmative Defenses as to the battery claim, Plaintiff moves for judgment on the pleadings.

[10] Defendant also raises as a defense the assertion that Plaintiff has "not alleged" prerequisites to suit. The Court already ruled that Plaintiff had the prerequisites when it denied the motion

5 – PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT, OR TO STRIKE AFFIRMATIVE DEFENSES

Page

KAFOURY & McDOUGAL
320 SW Stark Street, #202
Portland, OR 97204
Tel (503) 224-2647
Fax (503) 224-2673
(lastname)@kafourymcdougal.com

taking an action that prejudices them in relation to Plaintiff's case. Extensive discovery is required in federal court due to the notice pleading to even find out what defendants are talking about and whether they have any evidence to back up their claims. Likewise, an alleged failure to mitigate damages is also fact specific. Were comparable jobs available? Did Plaintiff know of them? Did plaintiff look for comparable jobs? Did the resultant emotional trauma occurring in any wrongful discharge prevent her from being able to work? Were comparable jobs available within a reasonable distance of her home? These questions require Plaintiff to know from the defendants what they are claiming was available and where it was and how much was being paid, and who the supervisors would be. Not every job is "comparable."

A claim that a remedy is bared by the Worker's Compensation Act is more then a legal question. An on-the-job physical assault by a manager following company policy is not, for example, bared by the Worker's Compensation Act if the company intended to hurt the worker. Discovery is required to find the basis of such a defense.

The final defense, an "offset," is a mixed legal/fact issue. Unemployment benefits, for instance, are collateral source monies and do not offset statutory or common law tort claims. On the other hand, money received through comparable work is an offset for lost wages, but not if that money came from a source, such as a second and after hours job, that Plaintiff could have utilized

to dimiss.

6 –   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT, OR TO STRIKE AFFIRMATIVE DEFENSES

KAFOURY & McDOUGAL
320 SW Stark Street, #202
Portland, OR 97204
Tel (503) 224-2647
Fax (503) 224-2673
(lastname)@kafourymcdougal.com

even if Fish Rite had not wrongfully terminated her. Even this defense has numerous factual issues.

If these affirmative defenses are allowed to stand, Plaintiff will have woefully insufficient time within which to defend herself against them. Indeed, fundamental due process requires that parties to litigation not avoid rule requirements so as to ambush their opponents. A delay of the trial will not help her because it is now two and one-half years after she was fired, and almost 14 months after she filed this case. Further delay now simply costs her more money.

## COUNTERCLAIM

In filing this case, Plaintiff in part relied upon the BOLI ruling, that after a thorough investigation (including an interview of Dorsey, Sr.) there was substantial evidence that Fish Rite and Dorsey, Sr. had unlawfully discriminated against Plaintiff by subjecting her to a sexual hostile work environment and firing her for objecting thereto[11]. Merten Declaration. Given that finding, there absolutely is no basis for an award of attorney fees in this case in favor of any defendant[12]. Further, a request for attorney fees for defending a present action is not a counterclaim. The so-called counterclaim should be dismissed because it is but a request for attorney fees if defendants' prevail in this case, but the BOLI finding precludes any statutory ground for

---

[11] Docket No. 9, Exhibit B thereto
[12] Barbara Dorsey is sued only for a common law tort. No attorney fees are available to either party on that claim.

Page 7 -   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT, OR TO STRIKE AFFIRMATIVE DEFENSES

KAFOURY & McDOUGAL
320 SW Stark Street, #202
Portland, OR 97204
Tel (503) 224-2647
Fax (503) 224-2673
(lastname)@kafourymcdougal.com

such fees.

## CONCLUSION

There are consequences to wrongful conduct. There can be no excuse for failing to comply with FRCP 12(4)(A). An order of default is justified. Failing that an Order striking the affirmative defenses and the counterclaim is the minimum relief Plaintiff should have.

DATED: November 24, 2009

*/s/ Charles J. Merten*
Charles J. Merten, OSB #630582
Attorney for Plaintiff

8 –   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT, OR TO STRIKE AFFIRMATIVE DEFENSES

KAFOURY & McDOUGAL
320 SW Stark Street, #202
Portland, OR 97204
Tel (503) 224-2647
Fax (503) 224-2673
(lastname)@kafourymcdougal.com

**CHARTER ANDERSON, LLP**
ATTORNEYS AT LAW
220 N. OAKDALE
MEDFORD, OR 97501
TEL. 541-779-9330 • FAX 541-779-0816

Joseph M. Charter*†
Eugene V. Anderson*

*Admitted in Oregon
†Admitted in California

Of Counsel:
Duane Light†

June 8, 2004

Mr. Job Valverde, Investigator
Bureau of Labor and Industries
3865 Wolverine St. NE, E-1
Salem, OR 97305-1268

Re: Overhauser v. Fish Rite, Inc., Case No. STEMWB040507-60582

Dear Mr. Valverde:

This will serve as the employer's response to the above referenced claim. Ms. Overhauser was hired as a bookkeeper general office help on February 26, 1996. She began as a part time employee and went to full time after approximately two years. During the period from May until August, 2003, Ms. Overhauser worked parttime from her home.

Jamie Dorsey is the sole owner of Fish Rite, Inc. During 2003, Barbara Dorsey, Mr. Dorsey's wife, worked at the company doing clean-up labor. Mrs. Dorsey worked for a few months on Fridays for a couple hours. Barbara Dorsey did not have any authority over Ms. Overhauser. She was not an officer or director of the company. Ms. Overhauser has acknowledged that Barbara Dorsey was not her employer. Ms. Overhauser and Mrs. Dorsey were friends during the first six and one half years of Ms. Overhauser's employment. Mrs. Dorsey was a confidant to Ms. Overhauser during Ms. Overhauser's separation from her husband in 1998.

Complainant alleges that she was involved in an altercation with Barbara Dorsey on October 22, 2003. Attached as Exhibit 1 to this response is the police report regarding that incident. Ms. Overhauser's deposition has been taken as result of the Stalking Complaint she filed against Mrs. Dorsey. Portions of that deposition is attached as Exhibit 2 to this response. Immediately after the October 22, 2003, Ms. Overhauser began typing a journal from notes she kept during the last year of her employment. The portion of the journal dealing with the incident of October 22, 2003 is attached as Exhibit 3.

At page 38 of the journal, Ms. Overhauser indicates that she called Mr. Dorsey after the incident, but Mr. Dorsey was out of range because he was elk hunting. She left a message stating:

EXHIBIT A

Mr. Job Valverde

Page - 2

"I can't take this anymore. I quit. I am sorry but I quit." Ms. Overhauser then phoned Mike Snow, Fish Rite's General Manager, who agreed to meet her back at the office. "I went straight to the office and made out my final paycheck." (See also, Depo., pp. 78-79). As the office accountant, one of Ms. Overhauser's duties was preparation of payroll. Mr. Snow signed the final paycheck. Ms. Overhauser also indicated in her statement to Police Officer Steigleder that she quit her employment. Ms. Overhauser also indicated in her deposition that she quit her job. (Depo., pp. 51, 54). Ms. Overhauser spent up to two hours at her mother's house after the incident and then when to the Employment Department to file for unemployment. (Depo., pp. 79-80).

Ms. Overhauser also indicates in her journal that Mr. Dorsey called her at 1:00 that afternoon and apologized several times. (Page 38). She indicates that Officer Steigleder contacted her later that afternoon and asked her to come to the police station to sign the Stalking Complaint. After leaving the police station, Ms. Overhauser receive another telephone call from Mr. Dorsey, who apologized again. The next morning, Mr. Dorsey called Ms. Overhauser and indicated that he would not contest Ms. Overhauser's claim for unemployment benefits. Significantly, Ms. Overhauser's accounting of the events shortly after they happened ***do not*** indicate that Mr. Dorsey ever said anything about taking Mrs. Dorsey to the police station or Ms. Overhauser's call to the police. Ms. Overhauser's journal indicates that Officer Steigleder, not Mr. Dorsey, called Ms. Overhauser regarding Mr. Dorsey bringing Mrs. Dorsey down to the police station. (Page 38). There is no support in her sworn deposition testimony or her contemporaneous journal that Ms. Overhauser's separation from employment had anything to do with her call to the police. First, Ms. Overhauser quit her job ***before*** she ever called the police. Second, there is no evidence that Mr. Dorsey took any action with respect to Ms. Overhauser's employment ***because*** she called the police. He simply indicated that the company would not contest her claim for unemployment benefits after Ms. Overhauser quit her employment.

The incidents described in paragraphs 1-5 have nothing to do with any action on the part of Mr. Dorsey, the President of the company. By her own testimony, Ms. Overhauser acknowledges that her separation from employment was accomplished by her own voluntary act on the morning of October 22, 2003. Therefore, Ms. Overhauser's report to the police could not have been the cause of her separation from employment.

Please call if you require any further information regarding this matter.

Very truly yours,

CHARTER ANDERSON, LLP

Joseph M. Charter